With the attorneys who are going to make the presentation today, please step up to the podium and then identify yourselves and the party you represent. Good morning. John Brattoli. I'm here on behalf of the plaintiffs. Arthur Rosenson. I'm here on behalf of the defendant, Appley. We've allotted 30 minutes for this case, but that's just the goal. We can be a little more flexible, but this is the only case on the docket this morning. The 30-minute time will be divided equally between the parties, and the appellant may reserve some time for rebuttal. With that, you may proceed. Thank you. Good morning again. What we have here, Your Honors, is a case of first impression. I believe that Judge Martin in the trial court dismissed this case with prejudice because he believed that a case like this could not proceed against a person who's not an officer, shareholder, or director of the corporation, which clearly Mr. Abuzir was not. There's no question about that. But if we look to the form over substance in this case, as the cases tell us we should do, it should not matter that he's not a principal in this case. And I believe that's the way he set this matter up, and it's been alleged in the complaint. He set this all up through his sister being the baker at this bakery, and his brother-in-law supposedly being the president or officer here on the documents, but he had no role in the corporation. So if we look at the factors in the two-pronged test for Pearson or Corporate Avail, out of those 11 factors that have been cited in the case, particularly the Fontana case, well, the only ones that are not involved would be about the Arms Lakes transactions or whether, in fact, there is some type of operation by a dominant shareholder. We don't have that here because there were never any shares issued. So basically, all but the two factors, I think, would be met here and have been alleged in the complaint. Well, we can agree, can't we, that at least in Illinois, and I understand that in other states that's certainly not the case, but in Illinois, are there any cases that you're aware of where the veil has been pierced without at least the person who's the target being a shareholder, officer, director, or employee of the corporation? Your Honor, I'm not aware of any case in Illinois that says that. I think that's the primary crux of the issue here, and that's why when the Tommaso case was cited referencing other jurisdictions in the Fontana case, the case from Connecticut, that's where it came up regarding this. This was kind of a reverse piercing action where actually two principals who were sued on a guarantee who they thought was the alter ego to try to get reimbursed on these documents or strike on these judgments that they were responsible for. And what's interesting about the Tommaso case also is the dissent. It's a quite lengthy dissent, and if we look at the last two footnotes, last two pages of footnotes, it looks like it was quite contentious between the majority in that case and the dissent in that case. And what's interesting is the dissenting judge pointed to a couple of things in particular. Of course, there's public policy in Illinois just as in other states. You want to protect people who are involved in corporations, whether they're just the shareholder or the director. You want to protect them because that's the purpose of a corporation, no doubt about it. You don't want to pierce that unless you have unusual circumstances, okay? But they said when you've got evidence that some person who's not a person who is a shareholder, officer, director, who is showing control of the corporation, that should give a court pause and say, well, what is really going on here? The court should then be less likely to worry about the veil because he must have some superior dominance. Otherwise, how could he control anything if he's not even a principal? You've been up here before on this case and went back to Judge Martin, and he again dismissed the case. And at the hearing, I believe you asked for, orally, for leave to amend. Right. What is it that you think you could have amended if leave was given you to allay whatever concerns the judge had? Well, there were some things pointed out by the Eppley's brief regarding information that could have been clarified. But in my brief, I stated that the purpose of 2615 is if you have a problem with you fail to plead something or you've pledged some superfluous matters, you really strike out the superfluous matters, or you give an opportunity to say, look, you missed this element of the cause of action, therefore, replete it. But I don't believe we did. I know I requested it. Really? What about knowledge of the sham that you're alleging? Okay. The bad guy, the malefactor here. What kind of knowledge did you plead? Well, the knowledge was that he was the only person at all. We're talking about Mr. Abduzir. He was the only person involved in setting this whole system, this whole corporation up. And the one that was directly involved, and he set it up because he had his other businesses, and he was being supplied bakery goods by other businesses. He figured, well, I'm going to set this up for this purpose. And then not only that, but then he's involved in the setting up the lease, terminating the lease, selling the assets. And he's the only one involved in signing documents. That's how people go into business, to make money, set up leases, get customers. The wrongful act alleged here was the violation of this agreement, secrecy agreement, or trademark agreement. Correct. If we're going to go outside here and say if we agree with you that we're not necessarily limited to stockholders and officers, if we go outside, don't we at least have to show some type of misconduct on the part of the person you're trying to get through, the defendant in this Pierce Act? Certainly you do, again, because that's the case. When have you alleged that? I believe it's alleged in the complaint because he's the one that set this up. And the reason he set this up, by getting this person and hiring this sloan to work for him. That's what they do all the time. The NFL is doing it today. They're getting the best players they can find. This guy says, I'm going to get a good baker. So what? I guess I'll try to ask it another way. But we're all struggling to say where has there been an allegation of the knowledge of the violation of the secrecy agreement? Because without the violation of the secrecy agreement, if your law firm was impressed with Mr. Rosenson and recruited Mr. Rosenson to be a member of your firm, there's nothing wrong with that. And basically what you're alleging in there is that he has recruited another bakery's baker. Correct. And that baker had the customer list, had the knowledge, had the recipes, and he's making identical products. Where does the violation of the secrecy agreement knowledge come from in your allegation? I believe the allegations are that he hired Sloan for that purpose. He hired Sloan. He knew she was their head baker because he had prior knowledge in dealing with this bakery. We're in a situation where he set this up, started this business, and happened to hire this baker. Our allegations are that Mr. Abusier was involved in other businesses who had previously done business with my client. He knew about their product. He knew about their staff. Go ahead. If Sloan did not have this agreement with her former employer, would you have been able to recover against the corporation, defendant corporation, in your original case? There was a secrecy agreement. Well, the secrecy agreement, that was about the ‑‑ About how to make certain products. The recipes. Okay. So if that wasn't a secret, and she just basically took her recipes someplace else, was there a violation? Was there a case there? I would probably say there wouldn't be. That's the crux of it here, because she agreed to be held in bond by the secret. That's why we named her as part of the suit. Did the defendant in this case know about that secret agreement? That's what we're getting. Well, I believe he did, and that's why he hired Sloan. I thought I did allege that in the complaint. I think you've got a forest and trees problem here. Something that's missing. Okay? That's what we're trying to suggest, that there's more that needs to be pled, even if we go along with you on the fundamental question of whether or not the veil should be pierced for somebody who's not a shareholder, but he is a bad guy. Okay, let's say we go along with that for the sake of argument here. Where's the substance that is needed on this issue that we're talking about? I think it's still lacking. Otherwise, we're just making a theoretical statement about what the law should be in Illinois on veil piercing without there being a case that brings that to the fore, because if there hasn't been a violation of the trade secret acts alleged, it's really with knowledge as to the targeted defendant that you're talking about, then it's just a theoretical musing. But we've also, not only do we have the written agreement, which is between Sloan and the Silver Fox, excuse me, Mama Graham's, we've got the issue with the trade secrets, that if they're putting out an identical product to those and telling people, look, we've got these products, there's that factor involved in it, too. That was also alleged, too, regarding the trade secrets. If we're putting out a certain product and they're going around and saying, we're putting out this identical product. Hydrox cookies have been doing that for Oreos for 40 years. I've tasted both. What I'm saying is, as Justice House's question and statement about the NFL is concerned, people are always trying to copy good ideas. The question is, is it a violation of the trade secret act to do it? And if it is, does the person you're targeting, have you alleged that that person had knowledge of the secrecy of the items? And I think the three of us are all struggling to find where that has been alleged. Okay. And also, if I can point to some other points regarding the dissent by the judge in the Tommaso case, he also talks about that when you have a person involved in the corporation, and in this situation there was alleged in the Tommaso case, you had this person in the wings there controlling it through these other officers, who in fact signed these personal guarantees. And I know the court did not find on behalf of the counter plaintiffs in that one. But they said, look, we have a requirement in that state, just like we do in Illinois, you sign under penalties of perjury when you do annual reports. So when you file these annual reports, you're saying these are the officers, these are the directors. We assume that they're true. And I think in our situation, I'm not saying there were annual reports filed on behalf of Silver Fox, but had there been, we have to assume they would have put down that Mr. Alsali, I think is his last name, he was the president when in fact he did nothing, he had no role in the corporation. So we've got that same issue there. Can I ask why you didn't originally sue Mr. Abuzir as an individual defendant, if you believe this? You mean the original suit back in 2006? Yeah. We didn't know about his existence and his involvement in it. We didn't know. We found this out during citation proceedings in questioning him under oath and also questioning his sister, Suna, and his brother-in-law, who supposedly were the people involved in the corporation. That's where it all came up. You never instituted an action against him individually for what you're claiming would be liability under the Trade Secrets Act. That's true. What you're basically doing is you're going sort of a circuitous route to hold him responsible for his actions in the corporation, but with what you're telling us, he was the corporation, he was the alter ego, and you never brought an action against him individually. Right. Frankly, I didn't know about him. I didn't know about him. You knew about him when you decided to pierce the corporate veil or tried to pierce the corporate veil, and you still didn't do it? Is there a reason? Because I thought that the best cause of action against him would be that all the dealings were with this corporation regarding the Silver Fox was involved, and whether direct action, what the theory, I hadn't even considered it because I'm not sure even sitting here now thinking about it, there would be a direct action against him other than the piercing the corporate veil. Well, I mean, you're basically saying it was his idea to do this, and you're basically saying that your allegations constituted a charge that he knew that this was a secret and tried to get the secret agreement breached. Why wouldn't that be actionable? Isn't that what a trade secret action is all about? I suppose it is, but, again, I hadn't considered filing an action against him directly. What I saw this was, under the circumstances, in setting up this corporation and that being all the dealings, that this was the way to go against Mr. Ebzer. And, again, as we know, piercing the corporate veil, I guess, technically is a remedy. It's not a cause of action. You have to have some underlying action. That's why I'm asking why you would have a cause of action instituted against the person you consider to be the main wrongdoer. Well, the only thing I can respond to that, Your Honor, is that in judging, in the cases that they talk about the wrongdoing, misconduct, fraud, something like that, and reviewing this and thinking about it, I think potentially, I suppose, an allegation could be made about a fraud action directly against Mr. Ebzer, but I just don't believe that would fly based on the facts that I know in this case and considering a direct action against him for fraud and the elevated burden of proof, which I believe is clear and convincing, when you have to show, which is virtually intentional and very high standard, against him directly for that, we would not be able to meet that burden directly against him. And, as I stated in my brief, we don't have to have actual fraud proved. I mean, certainly if we did here, that would be a factor, but it's the wrongdoing involved and basically self-dealing that was involved here that we believe is a reason for the, we should pierce the corporate veil. And also, it came up in the brief regarding Mr. Ebzer's knowledge and his ability to defend this case, but certainly I think it's clear that he did have knowledge of it. He was involved. He hired, he retained the attorney to defend the corporation for a period of time and then he just basically abandoned it as his own choice and took the chance because I certainly have thought about this and I believe I've probably had conversations with clients who were involved in a small corporation-type issue where they've incorporated and said, well, if it ever comes, push comes to shove and there is a judgment rendered against the corporation, you have to be very careful to show that you met all the requirements and you've followed the corporate formalities for fear that there potentially could be some type of action against you. That's always a concern that you can't just set it up as a shield when it's really not a legitimate corporation, underfunded, no assets, really run like a sole proprietorship and, in fact, just using this as a shield when it's only for your benefit. And, again, if the, again, this being a case of first impression, it's an unusual case, no question about it, just like the Tommaso case was an unusual case regarding what was going on there. But, again, with the back and forth between the dissent and the majority in that case, it must have been quite contentious whether it was during their meeting to write the brief or, in fact, on the bench where we had an opposite side going after the opposite party and, therefore, we may want to reserve a little time for it. I do, I do. Thank you, Your Honor. Thank you. I please the Court. Arthur Rosenson again on behalf of the appellee, Mr. Abusir. I want to address the first issue regarding the motion for leave to amend that was addressed. A quick timeline. Keep your voice up a little bit if you could. Yes. The lawsuit was filed in 2010. The original motion to dismiss under 2615 was granted in December of 2010. In the winter of that year. You know, Mr. Rosenson, that isn't an amplifier. It only records, so I think if you would keep your voice up. Oh, just in general. If you get as close as you want, you still got to raise your voice. Got it. Okay. In response to that original 2615 motion being granted, the plaintiff filed a motion for reconsideration, bringing to the Court's attention the Tommaso decision in Connecticut. Judge Martin agreed that this was worth considering, and therefore reversed himself on the, or vacated his order on the 2615 and said, okay, you've got the Tommaso case. Re-plead your claim. The plaintiff comes back in April of 2011 with a re-plead claim, knowing that the Court's going to be concentrating on Tommaso. Then there, this is after the discovery's been taken, Mr. Oppositor's been deposed, we know what the law is. Then I file a motion, unfortunately, under 2619 that gets granted. The case gets sent back to Judge Martin. The appellate court says in the order, look, we're not ruling on the 2615. There may, in fact, be a basis to dismiss under 2615, but we can't tell if Judge Martin was relying on the affidavit that had been ground zero. So we go back to Judge Martin, and Judge Martin obviously states beforehand, okay, are you relying on this pleading, because we clearly know the defendant's now going to file a 2615 motion properly, as the appellate court indicated in its opinion. And plaintiff elected to rely on its first amended complaint. So there was plenty of opportunity to amend this pleading. Plaintiff knew of all the law that was before it. It had all of the factual information. So there was no abuse of discretion by Judge Martin on the second go-around, on the motion that was granted that we're now up here on, when he stated that I'm not going to allow leave to amend, because one, you've had the opportunity, and you, in fact, took advantage of it. Two, we don't have anything new that's actually been pled. The only thing that could have possibly have been pled, which of course would have been the gravamen of the whole suit, is if plaintiff would have said that, for example, Mr. Abusier told Sloan and Jenkins to steal the secret recipes, or I will only hire you if you bring those recipes with you, or if you only sneak off with the customers. But would that prove the fact that maybe this should be sent back, if there is a pleading that he could have made that would survive, that's viable? I don't know if that should be the test, because clearly if you ultimately You don't want to give another bite at the apple, right? Well, my feeling is they had, the judgment was in 2007. They filed the complaint against my client three years later, so that's three years of discovery of facts, in 2010. They then had another two, two and a half years since that time. So I know that they're ruling the first amended complaint, and I've been in plenty of cases where we're on the seventh or eighth amended complaint. But look at the time frame and the amount of discovery that's occurred. There have been five years to develop whatever facts, and the very issue that I spoke about. But the Supreme Court said repeating should be liberally allowed. Of course, and obviously if you review the cases, what does liberally mean relates to the circumstances of the particular case. So if there had been a gun to this party's head, and there was a time crunch, or they didn't have an opportunity to take discovery, it's one thing. But there has never even been a presentation made by the plaintiff to say, here are the facts that we have had five years to plead, but we have neglected to do so by oversight. Well, that's what we were trying to explore with your opponent a few minutes ago, what he would allege if given the opportunity. This is about the fourth time we've argued this, almost always before Judge Martin. So we have had this discussion where Judge Martin has said, you want me to pierce the veil to reach someone who's not really behind the veil, but I'm going to consider that under this Connecticut case. But show me, if you want to follow that Connecticut case, show me the wrongdoing. Show me that he was the one who instigated it. You can't just say he hired two bakers. Of course he's going to hire bakers. He's running or they're operating a bakery. You need to hire people who know how to bake. You have to show that there was wrongful conduct. The issue regarding taking this business away, there was no allegation that there were any breach of contracts, of exclusivity agreements, or other issues. The only allegations were, here's the general story of what happened. And Mr. Abusir was intimately involved in starting his sister's business. Obviously it was a quick failure because it was incorporated in 2006 and dissolved in 2007. It didn't last very long. But okay, he was allowed to try and help out his sister to open up this business. But there was never an allegation that he did actually anything wrong. And I understand, and many times I'm on the plaintiff's side where I want an opportunity to replead. But it's quality, not quantity. And in this case, the quality of opportunity that was given to the plaintiff was enormous. There is no rock that has not been unturned or that couldn't have been unturned. We're now in, well, we really shouldn't talk about 2014. When the motion was denied, we were back in 2012. And so he got his default judgment in 2007. There were literally five years. And in 2011, and this is a key factor, in 2011, when that motion for reconsideration was granted, we all knew that Judge Martin was willing to consider this Connecticut case, and to perhaps not necessarily expand, but to consider applying existing Illinois law to a circumstance that is comparable to what was addressed there. What do you think about that? We know where you're at on the amendment. I've got two answers. One is a zealous advocate, and one is a member of the bar. As a zealous advocate, I would say, of course, no, don't expand it. This shouldn't be the place, et cetera. But practically speaking, as a member of the bar, generally there's a maximum chancery division. You can't do indirectly that which you are not allowed to do directly. So clearly, if you've got a puppet that you are operating, chancery should be able to address the situation. So the concept of reaching someone who intentionally doesn't place himself in any role seems to me, as an attorney who practices in chancery, that's not something that you would want to reward. On the other hand, I do like the concept that the Connecticut court said, which is that in that type of situation, you've got to really tie this individual into the actual wrongful conduct. Not merely a failure to have an annual corporate report or meeting, but the actual wrongful conduct. Because since we're opening the door somewhat wide, we want to see that he truly, or she, is implicated in what occurred. So if I was in your place in that concept, I don't think that the Connecticut court was out of line. It makes sense. It's not just Connecticut. If you look throughout the nation, New York, Louisiana, Indiana, there are more and more jurisdictions recognize that there's lots of ways to set up sham corporations, and you don't have to be too clever to set up a sham corporation where you're not an officer or a shareholder. Because every time a case comes out, someone, I should say some attorney perhaps, may counsel their client, okay, here's another wall that you should build. So I would agree. The concept makes judicial sense. And factually speaking, we have, this is pretty much Fontana too, but for the fact that the defendant was the president of the corporation. Fontana. Well, no, Fontana, he was a really bad guy in that case. You would like to distinguish? In the Fontana case, that builder who really didn't build the plaintiff's house, he was not a good guy. I mean, it was like $1.8 million. That was a cheap shot. There was like $1.8 million in the company that was healthy, surviving, that he just like looted, hid, however you want to phrase it. He was a malefactor. There's no question about it. I would go with that. This case, we have a situation where, look, the allegation was that there, and this is the complaint, the allegation, that Mr. Abuzir, this is paragraph 28, provided funds to start the business. Now, remember, this is a new business. It didn't last that long. This wasn't something where there was a thriving, existing business for many years. It was his idea, according to the allegation, to start the business. He put in somebody who had never had any experience in that business as the operator of the business, supposedly. He put in somebody as a nominal officer who, according to the allegation, did absolutely nothing, and he, according to the allegation, hired the baker from the plaintiff company. I mean, so it wasn't just that he funded the business of a relative. The allegations are somewhere between that and reaching what Justice House was talking about, which is allegation of the knowledge of the violation of a trade secret act. I agree with the characterization of the allegations, all except for one thing. They said that he was involved in the hiring. They didn't say that he interviewed the person. They didn't say that he talked to the person. They didn't say that he asked Jenkins or Sloan to bring anything with him. They just said he was involved in the hiring, whatever that means. But I agree with everything else the court said. But the key thing is that, again, let's assume, which we must in the 2615, that all of this is correct. So he's giving his sister immeasurable help. She's running the business. He's setting up everything for her. All you're going to have to do is go in the kitchen and bake, but I'm going to create the whole business enterprise. I'm going to file all the papers, et cetera, et cetera. That's not what they are claiming about, that they are asserting why there is liability. They're asserting that he was involved in the wrongful conduct that got him the $400,000 default judgment, and that was because there was, in a normal situation, tortuous interference with contract or violation of the Trade Secrets Act or a variety of noncontractual wrongful conduct. So this is a bakery case involving a tort? Very good. Try that on us before we came out. We didn't encourage it. We probably have writers who feed you these lines just waiting for it. But, yes, so my comment is that in this particular case, we all knew what the bar was that had to be jumped over. That was made crystal clear at the motion for consideration. There was opportunity to jump over that bar. Those facts were not played. So this is a case where they, I understand what they wanted to do, but the pleading didn't do it. There was ample opportunity, and based on the amount of time, it was not an abuse of discretion by Judge Martin to deny the oral motion for leave to amend without a proffered supposed second amended complaint that would have cured the defects. Thank you. Thank you. Mr. Bertoli? Yes. Thank you. Just one thing. Counsel mentioned that if you have a puppet, you don't want to reward that conduct. In other words, he's operating, you know, using these supposed officers as his puppets for the business. But certainly he's the only one involved, and I think that's been alleged, is being involved because of Sooner's lack of knowledge, any baking business or any baking experience, and also regarding Mr. O'Sulley, who really did nothing. And also, as far as the hiring, I think counsel mentioned about why we don't have any allegations that he did the interview, he talked to them, he said, I want you to do this. But, again, Mr. Ebbers, you're the only person involved in doing the hiring, and our contention is he did the hiring because he knew about this business and what she was doing for my client before she was hired away. And also I wanted to comment on one thing also in the, excuse me. I think it's in, there's a case that's mentioned in the dissent also regarding if you have a creditor, and I didn't say anything on my other argument, that even if you have a creditor who's supposedly the alter ego, there's a chance that that could also be pierced as to a creditor, where there's that CREVO case mentioned that when really the creditor is doing total control of the debtor, which is the other corporation, that that can be a situation you can pierce. Mr. McCauley, I don't hear Mr. Rosenson's argument to be premised on the fact that a non-shareholder can't ever equitably be held responsible in a piercing the corporate veil case. I hear him say that the allegations don't meet the required allegations for wrongdoing and that it was not an abuse of discretion for the judge to deny a request to replead. Don't you? Well, I thought that was the primary focus from the beginning of his prior motions in our practice in the trial court was that he's saying, look, this guy's never been an officer, shareholder, director. The case law basically says, well, it didn't specifically say you have to have that as a prerequisite, but all the case history we've had in Illinois, in particular, absent the Tommaso reference, it's always been this situation, so I felt they had to address it because, again... Okay, but I think that ship has sailed. Okay. At least in terms of the arguments on this case. All right. With that, members of the panel, I have nothing else to add unless you have questions. Thank you very much. Thank you. This is a very interesting case. We enjoyed the argument and we'll be taking it under advisement and we'll issue a decision in due course. Thank you. Thank you.